**ENTERED**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

MAY 2 1 2007

**K.R.W.**

| | |
|---|---|
| In re, | C/A No. 06-01499-JW |
| Worldwide Wholesale Lumber, Inc., | |
| Debtor(s). | Adv. Pro. No. 07-80008-JW |
| | Chapter 7 |
| Michelle L. Vieira, | **ORDER** |
| Plaintiff(s), | |
| v. | **FILED** |
| AGM II, LLC and Lancelot Investor Fund, | __ O'clock & __ min __ M |
| L.P. d/b/a Surge Capital, | MAY 2 1 2007 |
| Defendant(s). | United States Bankruptcy Court |
| | Columbia, South Carolina (19) |

This matter is before the Court upon the Motion of AGM, II, LLC and Lancelot Investor
Fund, L.P. ("Defendants") to dismiss the amended complaint filed by Michelle L. Vieira, as
Chapter 7 Trustee ("Trustee") for Worldwide Wholesale Lumber, Inc. ("Debtor"), pursuant to
Fed. R. Civ. P. 12(b)(1) and (6). The Court makes the following Findings of Fact and
Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, made applicable to this
proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

**FINDINGS OF FACT**

1.    Prior to the petition date, Debtor operated as a distributor of lumber. AGM was
the lender for Debtor and lent money based upon Debtor's inventory in exchange for a security
interest in the same. AGM and Debtor entered into a Master Financing Agreement, dated June
22, 2005, to evidence this relationship.

---

[1]    To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to
the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

2.    Debtor's bankruptcy case was commenced on April 12, 2006 when creditors of Debtor, other than AGM, filed an involuntary petition under chapter 7 with this Court.

3.    Debtor consented to an order of relief under chapter 7 and an order of relief was entered on April 18, 2006.

4.    Trustee was appointed as the chapter 7 trustee in Debtor's case.

5.    On April 24, 2006, AGM sought relief from the automatic stay on an expedited basis so that it could foreclose on its security interest in its collateral held by Debtor.

6.    A hearing on the Motion for Relief from the Automatic Stay was held on April 28, 2006.  The parties negotiated during a lengthy recess and agreed to consent to the order granting AGM relief from the automatic stay under specified conditions, which were read into the record by the Trustee. The parties agreed that the goods needed to be promptly sold because the value of the goods was rapidly decreasing as a result of deterioration and the accrual of liens. The Court entered an oral ruling granting AGM relief from the automatic stay under the terms specified by the parties.[2]

7.    On April 28, 2006, AGM conducted a public auction pursuant to Article 9-610 of the Uniform Commercial Code.  AGM was the successful bidder at the sale with its credit bid of $1 million.

8.    Following the sale of goods held by Debtor, AGM deposited with Trustee all proceeds of the sale, including proceeds from the goods sold following AGM's purchase of the goods at the UCC sale.  In all, AGM escrowed approximately $4,356,849.00 with Trustee.

9.    On May 26, 2006, and subsequently on July 6, 2006, AGM filed its first and second amended proofs of claim, respectively, asserting $5,619,301.85 as the amount of its

---

[2]    A written order granting AGM relief from the automatic stay was entered on May 9, 2006 effective *nunc pro tunc* to the oral ruling delivered by the Court on April 28, 2006.

claim.[3] AGM's claim asserts that it is a creditor secured by an interest in certain assets of Debtor.

10.     On June 13, 2006, AGM filed a motion to allow its proof of claim and compel payment thereof ("Allowance Motion"). AGM's Allowance Motion sought to allow its proof of claim and compel Trustee to promptly and indefeasibly pay the claim.

11.     Trustee filed a return to AGM's Allowance Motion on June 26, 2006. Trustee opposed the Allowance Motion on grounds that AGM possessed all relevant corporate records to determine the amount of the claim. Trustee also stated in her return that it was too soon to allow payment of the claim as there may be outstanding issues of subordination and priority to be resolved. Trustee did not affirmatively request that the Court subordinate or determine the priority of AGM's claim.

12.     On June 30, 2006, Trustee wrote the Court regarding the discovery needed for the Allowance Motion. Trustee suggested the Court include Wells Fargo and the Chinese Mills in the discovery process so that "issues of claim allowance and subordination could be litigated in a single proceeding." Trustee estimated it would take several months to complete discovery and have the matter prepared for trial.

13.     On June 30, 2006, after receiving the letter from Trustee and consulting with the other parties to this matter, the Court entered a scheduling order on the Allowance Motion. The scheduling order required the parties to complete discovery by September 20, 2006 and set a pre-trial hearing on the motion for October 5, 2006.

14.     On July 21, 2006, Jiaxing Hengtong Wood Co., Ltd., Tianjin Jinnan Dist., Tongmei Timber Co., Wenan Xinda Wood Industry Co. Ltd., and Zaozhuang Hongrun Wood Co., Ltd. (collectively the "Chinese Mills") objected to the Allowance Motion on grounds that

---

[3]       AGM's initial proof of claim was filed on April 26, 2006.

there was insufficient information to allow the claim and that parties may have claims against AGM. The Chinese Mills did not seek affirmative seek relief against AGM and later withdrew its objection.

15.    Trustee filed a motion to extend time to complete discovery on September 19, 2006 on grounds that AGM provided Trustee with relevant documents shortly before the discovery deadline and Trustee was unable to review these documents because of the massive quantity of documents produced.[4]

16.    AGM opposed Trustee's motion to extend time on grounds that it cooperated in discovery and that Trustee was seeking to alter the scope of the trial on the Allowance Motion by excluding issues regarding any subordination claim that Trustee may have against AGM. AGM's response indicated that the Allowance Motion was "an invitation" to litigate all issues concerning AGM's claim.[5]

17.    On September 27, 2006, the Court, over AGM's objection, amended the scheduling order to provide Trustee with an additional month to complete discovery.

18.    Prior to the trial on the Allowance Motion, Trustee filed a motion *in limine* to exclude evidence regarding whether AGM's claim should be subordinated or reclassified. On January 5, 2007, the Court denied Trustee's motion *in limine* without prejudice holding "issues of subordination, priority, lender liability or reclassification have not been pled and therefore are

---

[4]    Trustee estimated at the hearing on the motion to dismiss that she was provided 600,000 documents by AGM shortly before the deadline to conclude discovery.

[5]    This position was restated by AGM's counsel at a hearing on November 7, 2006 at which counsel stated:

> From the outset, I thought that [Allowance Motion] was a matter that we brought to invite any counter litigation against us so that we could be done with this case and get our money, if any, pay our money if we owe it, and move on.
>
> So, apparently those issues will not be presented by the Trustee at the trial, and that's a decision that the Trustee made, and that's fine.
>
> So, with that decision having been made, I do think that the trial will be a fairly simple mathematic exercise.

4

not expressly before this Court in this contested matter.  To the extent that evidence bears upon these issues, the Court will not make a ruling as to whether the Trustee is entitled to such relief or whether such relief is barred based upon defenses alluded to by AGM."

19.    A trial on the Allowance Motion was held on January 8, 2007.  Trustee and AGM each submitted evidence regarding the calculation of AGM's claim.  On February 12, 2007, the Court entered an order granting in part and denying in part the Allowance Motion.  In the February 12, 2007 order ("Allowance Order"), the Court found:

      a.  AGM has an allowed claim in the amount of $3,866,460.85;[6]

      b.  Prior to the petition, AGM obtained a perfected security interest in all of the tangible and intangible assets of Debtor, including inventory and the proceeds thereof;

      c.  Trustee should turnover all funds escrowed with her by AGM because such funds where either property of AGM, as proceeds from collateral AGM purchased at a UCC sale, or fully encumbered by AGM's security interest.

20.    Trustee timely filed a motion to alter or amend the Allowance Order pursuant to Fed. R. Civ. P. 59(e).

21.    On March 12, 2007, AGM filed a motion to compel Trustee to comply with the Allowance Order by paying to AGM the funds held in escrow by Trustee.

22.    Trustee opposed the motion to compel on grounds that her motion under Fed. R. Civ. P. 59(e) suspended the finality of the Allowance Order and the Court should otherwise stay the turnover of funds to AGM based upon AGM's pre-petition conduct.

---

[6]    AGM's claim was reduced to $3,866,460.85 as a result of AGM's collection from other sources and the $1 million credit bid at the UCC Sale.  The Court also found that the claim should be further reduced to the extent that the funds held in the segregated account constitute accounts receivables collected by AGM prior to the date of the UCC Sale.

23.    The Court granted AGM's motion to compel on April 6, 2007 finding that Trustee's motion to alter or amend did not stay the Allowance Order, that Trustee did not seek a stay of the Allowance Order under recognized procedure for staying an order, and that the Allowance Order should not otherwise be stayed based upon unproven allegations. Trustee withdrew her motion to alter or amend the Allowance Order following the entry of the order compelling Trustee to comply with the Allowance Order.

24.    Trustee did not appeal the Allowance Order, which stands as a final order on the allowance of AGM's claim.

25.    On January 22, 2007, this adversary was referred to this Court from the United States District Court for the District of South Carolina. Trustee's original complaint requested relief only against AGM under causes of action for breach of fiduciary duty as to Debtor and other creditors and sought equitable relief under theories of constructive trust and accounting.

26.    AGM filed a motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement.

27.    The Court entered an order in this adversary on February 28, 2007 denying AGM's motion to dismiss but requiring Trustee to amend her complaint to set forth in more detail facts supporting her complaint.

28.    On February 12, 2007, after the entry of the Allowance Order, Trustee filed a second adversary (Adv. Pro. No. 07-80013) against AGM and Lancelot seeking to equitably subordinate or reclassify any claim held by these parties.

29.    On March 14, 2007, Trustee filed an amended complaint now at issue. The amended complaint contains the causes of action in the original complaint as well as those actions contained in the second adversary proceeding and a cause of action under 11 U.S.C.

§ 547.[7] The general theory of Trustee's amended complaint is that Defendants took control over Debtor prior to the petition date and liquidated inventory that Defendants knew was stolen; thereby, causing damages to creditors and breaching fiduciary duties owed to Debtor.

30.      Defendants move to dismiss the amended complaint on grounds that every cause of action is barred by collateral estoppel, *res judicata*, the law of the case doctrine, and *in pari delicto*. Defendants also assert that particular causes of action should be dismissed because the amended complaint fails to state a cause of action or that Trustee otherwise lacks standing to bring the action.

## CONCLUSIONS OF LAW

I.      **Defendants' Motion Under Rule 12(b)(6)**

A.      **Standard For Granting the Motion Under Rule 12(b)(6)**

The pleading standard under Fed. R. Civ. 8(a) is liberal and the Court should not dismiss a Complaint if it sets forth any legally cognizable claim for relief. See Bowers v. Hardwick, 478 U.S. 186, 202, 106 S.Ct. 2841, 2849, 92 L.Ed.2d 140 (1986). In deciding a Rule 12(b)(6) motion to dismiss, the Court must take all well-pled material allegations of a complaint as admitted and view them in the light most favorable to Trustee. See De Sole v. U.S., 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848 (1969)). A Rule 12(b)(6) motion should not be granted unless it "appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved at trial in support of his claim." Rogers v. Jefferson Pilot Life Insurance Co., 883 F.2d 324, 325 (4th Cir. 1989) (citing Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). The function of a motion to dismiss is to test "the sufficiency of a complaint; importantly it does not resolve contests

---

[7]      By consent, the second adversary was dismissed without prejudice upon the consolidation of the causes of action contained in the complaint in that proceeding with the amended complaint in this proceeding.

surrounding the facts, the merits of a claim, or the applicability of defenses." See Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993) (finding defendants face a "procedural stumbling block" when asserting affirmative defenses in a motion to dismiss since a motion to dismiss is designed to test the sufficiency of the complaint).  When reviewing a motion to dismiss, it is inappropriate to consider facts outside of the amended complaint as the Court's inquiry is limited to whether Trustee's allegations constitute a short and plain statement of claim showing that he is entitled to relief.  See Colleton Regional Hosp. v. MRS Medical Review Systems, Inc., 866 F.Supp. 891, 893 (D.S.C. 1994).  Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) under the both affirmative defenses and the alleged failure by Trustee to state a claim.

### B.    Application of Law to Defendants' Rule 12(b)(6) Motion

### 1.    Affirmative Defenses

Notwithstanding the general rule that affirmative defenses should not be considered on a motion to dismiss, the Fourth Circuit allows defenses to be considered if they clearly appear on the face of the complaint.  See Forst 4 F.3d at 250.  Further, defenses such as *res judicata* and collateral estoppel may be considered on a motion to dismiss.  See Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); Campbell v. Cathcart *et al.* (In re Derivium Capital, LLC), C/A No. 05-15042-W, Adv. Pro. No. 06-80163, slip op. (Bankr. D.S.C. Dec. 22, 2006). Defendants assert that the amended complaint is subject to dismissal based upon affirmative defenses more fully set forth herein.

a.    **Claim Preclusion**

The doctrine of *res judicata* encompasses two concepts: claim preclusion and issue preclusion, also known as collateral estoppel. See In re Varat Enterprises Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). Defendants bear the burden of proving that Trustee is estopped from bringing this adversary based upon the Allowance Order. See Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). "Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." See United States v. Ruhbayan, 325 F.3d 197, 203 (4th Cir. 2003) (quoting Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970)).

Since Defendants seek to dismiss the amended complaint under both theories, the Court will first address whether the amended complaint is barred under the doctrine of claim preclusion. "Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." See Varat, 81 F.3d at 1315. (citing Nevada v. United States, 463 U.S. 110, 129-30, 103 S.Ct. 2906, 2917-18, 77 L.Ed.2d 509 (1983)). The following three elements must be present to apply claim preclusion: "1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." See id.

The first two elements of claim preclusion are met as to AGM. The Allowance Order is a final judgment on the merits of the Allowance Motion and AGM and Trustee are common to this

adversary and the prior contested matter.[8]  However, the third element of claim preclusion is not

met.  The Allowance Motion was a contested matter in which AGM only sought to allow its

claim and compel payment thereon.  In this adversary, Trustee is not contesting the amount or

allowance of AGM's claim but is seeking to alter the priority of AGM's claim through either

subordination or reclassification.  Though these causes of action may alter AGM's right to

payment and status as a secured creditor, these causes of action are not identical to the causes of

action in the prior contested matter.  The Fourth Circuit's case of County Fuel appears

dispositive on the issue. See County Fuel Co., Inc. v. Equitable Bank Corp., 832 F.2d 290 (4th

Cir. 1987).  In County Fuel, a chapter 11 debtor brought a tort action against a creditor more than

two years after the creditor obtained stay relief and had its claim allowed.  The district order

dismissed the action on grounds that the allowance of the claim and the lifting of the automatic

stay, a contested matter that led to an appeal and the creditor receiving payment in full on its

claim, was res judicata as to the issues raised by the debtor.  The Fourth Circuit reversed the

district court and found "the better and decidedly majority view is that the failure to interpose

such an available 'counterclaim' does not, as a matter of res judicata, bar its subsequent

assertion as an independent claim for relief." See id. at 292.  Though Trustee opposed the

calculation and payment of AGM's claim on the contested matter to allow the claim, she did not

join in her objection the causes of action now at issue.[9]  The doctrine of claim preclusion does

not bar these actions, even though AGM has been paid its claim, because issues of priority and

the estate's claims against Defendants were not properly before the Court on the Allowance

Motion. See id. (holding "[u]nder relevant bankruptcy law, objections may be made and allowed

---

[8]        Lancelot is not common to this adversary and the contested matter; however, the Court need not determine
whether Lancelot can invoke res judicata because the Court finds that the defense fails as a matter of law on the
third element of claim preclusion.
[9]        As more fully set forth herein, the actions now at issue require an adversary proceeding and the Federal
Rules of Bankruptcy Procedure did not compel Trustee to raise these actions in response to the Allowance Motion.

after automatic allowance of a claim ... and indeed a claim allowed by order may be later disallowed upon reconsideration.").[10] See also In re Ginter, 349 B.R. 193, 196 (8th Cir. BAP 2006) (finding that *res judicata* did not prohibit the subsequent avoidance of a lien established in a prior contested matter since the issues of avoidance and establishment of the lien were not identical). In this case, Defendants, like the creditor in Ginter, will still have a claim against the estate in the amount set by the Allowance Order, albeit potentially at a lower priority depending upon the outcome of this adversary.

Defendants nevertheless contend that AGM's Allowance Motion put at issue whether AGM's claim should be "indefeasibly paid." The Allowance Order granted in part and denied in part the Allowance Motion. The Court did not order that the claim was to be indefeasibly paid but merely compelled Trustee to make a distribution to AGM, pursuant to 11 U.S.C. §§ 725 and 726, as AGM appeared, based upon the limited scope of the Allowance Motion, to be entitled to all proceeds held by Trustee based upon its security interest and purchase of property at the UCC sale and Trustee had not formally asserted any other action that would preclude payment. See Maryland National Ind. Fin. Corp. v. Vacuum Cleaner Corp. of America (In re Vacuum Cleaner Corp. of America), 33 B.R. 701, 704 (Bankr. E.D. Pa. 1983) (holding that a finding in a contested matter is made in light of the nature of the dispute and does not necessarily have preclusive effect in all subsequent matters). It is doubtful that the Court, in the prior contested matter, could compel Trustee to make an indefeasible distribution on a claim since 11 U.S.C.

---

[10]     The Fourth Circuit ultimately affirmed the district court's dismissal of the action by finding that the debtor waived the right to bring the action. See County Fuel, 832 F.2d at 292-293. Unlike the facts in County Fuel, Trustee did not unreasonably delay in bringing this action but rather brought it in district court prior to the trial on the Allowance Motion and joined actions for subordination and reclassification immediately following the entry of the Allowance Order. Further, unlike the Debtor in County Fuel, Trustee has not acquiesced to Defendants' position but has at all times maintained that she has a right to seek the subordination of AGM's claim and seek damages against Defendants. Therefore, it would not appear proper to find that Trustee has waived any of her rights. See Arizona v. California, 530 U.S. 392, 412-413, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (finding courts should be cautious about raising a preclusion bar *sua sponte* especially when no judicial resources were expended on the resolutions of the questions at issue).

§ 502(j) specifically permits the allowance of a claim to be reconsidered and recognizes that Trustee may recover any excess distribution to a creditor. See County Fuel, 832 F.2d at 292. Further, AGM could not put at issue in the Allowance Motion whether its claim should be indefeasibly paid since such a proceeding would appear to necessarily require an adversary, pursuant to Fed. R. Bankr. P. 7001(2), to determine issues regarding the priority of AGM's claim. See Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) (holding contested matters generally cannot resolve issues that must be raised by an adversary); In re Banks, 299 F.3d 296, 302 (4th Cir. 2002) (holding "[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect").

Similarly, Trustee's actions now at issue also could not have been at issue in the prior contested matter since these actions are matters that should be raised by an adversary proceeding. See In re George, 318 B.R. 729, 737-738 (9th Cir. BAP 2004) (holding an order requiring the surrender of leased property is not *res judicata* as to debtor challenging the validity of the underlying lease since the latter must be brought by adversary); In re Lexington Racquetball Club, Inc., 58 B.R. 103, 104 (Bankr. E.D. Pa. 1986) (holding a contested matter is not the proper forum for airing counterclaims and third party actions). Though AGM makes much out of the finding that Trustee should pay AGM its claim, from which AGM infers that Trustee had no cause of action against AGM following payment, this finding was premised upon the presumption provided by Fed. R. Bankr. P. 3001(f) that AGM's claim, as filed, is valid. The Allowance Order recognized this presumption and determined the amount of the claim for the limited purpose of the contested matter before the Court. See In re Beard, 112 B.R. 951, 955 (Bankr. N.D. Ind. 1990) (finding that a contested matter involving the allowance of a secured

12

claim assumes that the underlying lien is valid and enforceable). Payment of the claim flowed

from the presumption afforded AGM that its lien is otherwise valid and enforceable but Trustee

may seek to alter the claim and recover payment pursuant to the Bankruptcy Code. See 11

U.S.C. § 502(j). The Court did not finally determine the priority of AGM's lien as this issue is

necessarily a matter that must be raised in an adversary proceeding pursuant to Fed. R. Bankr. P.

7001(2).[11] See Beard, 112 B.R. at 955. Trustee's other causes of action are also matters for an

adversary proceeding pursuant to Fed. R. Bankr. P. 7001(1), (7), and (8). Therefore, the

Allowance Order cannot be given preclusive effect on these issues raised in this adversary since

these issues were not properly before the Court on the Allowance Motion and the Court did not

otherwise make a finding on these issues. See Cen-Pen Corp., 58 F.3d at 93 (citing Beard and

finding that a contested matter cannot determine matters specifically reserved for an adversary

proceeding under Fed. R. Bankr. P. 7001 and therefore an order in a contested matter is not given

preclusive effect on these matters); Beard, 112 B.R. at 955-956 (holding only issues that may be

determined by a contested matter may be given preclusive effect). See also, Spartan Mills, 112

F.3d at 1256-1257 (finding, on a motion to sell property free and clear of liens, that a party may

not collaterally attack an order allowing the sale and recognizing the priority of a bank's lien

notwithstanding that priority was not determined by an adversary proceeding).[12]

Finally, Trustee was not compelled to raise these causes of action during the prior

contested matter.[13] Fed. R. Bankr. P. 9014 specifically provides that Fed. R. Bankr. P. 7008 and

---

[11]     The Court held on January 5, 2007 that issues of subordination, priority, lender liability and reclassification
were not expressly before the Court and the Court was not making a ruling on these issues.   Therefore, unlike
Spartan Mills v. Bank of America Illinois, 112 F.3d 1251 (4th Cir. 1997), the Court did not make an express ruling
in a contested matter on the issues now raised in this adversary and therefore this adversary is not a collateral attack
on the Allowance Order.
[12]     Unlike Spartan Mills, there was no specific adjudication of priority in the prior contested matter but rather
the Court ordered on January 5, 2007 that it was not determining issues of priority and subordination.
[13]     AGM relies on Trustee's reply to the Allowance Motion and her letter dated June 30, 2006 for the position
that Trustee put at issue subordination and other claims effecting AGM's right to payment.  In her reply to the

7013 do not apply to contested matters. See Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In the Matter of TransAmerican Natural Gas Corp.), 978 F.2d 1409, 1416 (5th Cir. 1992). By excluding Rules 7008 and 7013 from contested matters, Trustee was not compelled to raise any affirmative defense to the Allowance Motion or bring compulsory counterclaims. See D-1 Enterprises, Inc. v. Commercial State Bank, 864 F.2d 36, 39-40 (5th Cir. 1989) (setting forth the distinction between adversary proceedings and contested matters and the policy for not barring an adversary on *res judicata* grounds based upon a prior contested matter); George, 318 B.R. at 737-738 (finding under the Restatement (Second) of Judgment's counterclaim rule, an adversary is not barred subsequent to a contested matter because the debtor is not required to raise a counterclaim in the contested matter). The Fourth Circuit has previously recognized this principal in County Fuel where it held that the claim allowance process does not preclude subsequent actions that may impact payment of the claim. See County Fuel, 832 F.2d at 292.

Therefore, the Court cannot find that the amended complaint should be dismissed on grounds of *res judicata* because the issues raised in the amended complaint were not at issue during the prior contested matter and Trustee was not required to raise these issues prior to this adversary.

### b.    Collateral Estoppel

The scope of collateral estoppel is narrower than claim preclusion. See Varat, 81 F.3d at 1315. To bar the amended complaint on grounds of collateral estoppel Defendants must

---

Allowance Motion, Trustee generally stated that the motion should be denied until the Court determined whether AGM's claim should be subordinated. Trustee did not seek affirmative relief or an adjudication on whether she had such a claim against AGM. Further, Trustee's letter to the Court dated June 30, 2006 does not alter the scope of the trial on the Allowance Motion. Trustee's letter merely proposed that the Court set a discovery schedule so that all matters "could" be litigated in a single proceeding. Trustee's reply to the Allowance Motion and letter did not imply that all matter would be litigated on the Allowance Motion nor did she seek to waive Rule 9014 and join all the issues raised in this adversary. AGM opposed affording Trustee more time to prepare for trial, which may have potentially enabled her to raise these actions in the contested matter, when Trustee sought additional time to engage in discovery following AGM's production of a large quantity of documents near end of the discovery deadline.

establish: "(1) the issue to be precluded is identical to the issue already litigated, (2) the issue was actually determined in the prior proceeding, (3) the determination of the issue was an essential part of the decision in the prior proceeding, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue." See In re Coleman, 426 F.3d 719, 729 (4th Cir. 2005). As previously set forth, elements one, two, three, and five cannot be met because the issues raised in this adversary were not previously before the Court, the Court did not make a determination on the issues now raised, and Trustee did not have a complete opportunity to address these issues, which require an adversary proceeding. Therefore, Defendants' motion to dismiss cannot be granted on grounds of collateral estoppel.

      c.      **Law of the Case Doctrine**

The law of the case doctrine guides in the Court's determination of issues but it does not prohibit the Court from reconsidering an earlier ruling. See American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003). "The ultimate responsibility of the federal courts, at all levels, is to reach a correct judgment under law." Id. The law of the case doctrine does not bar the litigation of the issues raised in the amended complaint since these issues were not properly before the Court on the Allowance Motion and therefore were not determined by the Court. Hovis v. General Dynamics Corp. et al., (In re Marine Energy Systems Corp.), C/A No. 2:06-2483-PMD, slip op. at 17-19 (D.S.C. Apr. 18, 2007) (affirming the bankruptcy court's order determining that certain defenses were not barred by the law of the case doctrine). See also D-1 Enterprises, 864 F.2d at 39-40 (noting that contested matters are generally "self-contained episodes").

      d.      *In Pari Delicto*

Defendants assert that the defense of *in pari delicto* bars Trustee's action for breach of fiduciary duty. *In pari delicto* is defined as "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." BLACK'S LAW DICTIONARY 794 (7th ed. 1999). This doctrine precludes one joint tort-feasor from seeking indemnity from another. See Rock Hill Tel. Co. v. Globe Commc'ns, Inc., 363 S.C. 385, 389 n. 2, 611 S.E.2d 235, 237 n. 2 (2005). However, in South Carolina, the doctrine does not bar an action where an agent is acting adverse to the interest of the principal. See Derivium, slip op. at 6-8; Myatt v. RHBT Financial Corp., 370 S.C. 391, 635 S.E.2d 545, 548 (S.C. Ct. App. 2006) (citing Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995)); Little v. S. Cotton Oil Co., 156 S.C. 480, 483-84, 153 S.E. 462, 463 (S.C. 1930) (holding acts of an agent are not imputed to the principal where the agent is acting adverse to the principal). The doctrine also does not apply when a receiver is seeking recovery of diverted funds for a corporation from the beneficiaries of wrongdoing. See Myatt, 635 S.E.2d at 548.

Evident in the amended complaint is that Trustee alleges Defendants took control of Debtor's operations and engaged in self-dealing. Trustee's allegations, if true, preclude the application of the defense of *in pari delicto* as Defendants' interests in operating appear adverse to Debtor and its other creditors and Trustee appears to be seeking to recover diverted funds from the beneficiary of the wrongdoing. See Myatt, 635 S.E.2d at 548; Official Comm. of Unsecured Creditors v. American Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 479 (Bankr. S.D.N.Y. 2006). Therefore, the Court denies the motion to dismiss because *in pari delicto* does not clearly appear on the face of the amended complaint and necessarily involve a factual determination of Debtor's and Defendants' conduct. See Derivium, slip op. at 6-8 (finding that the Court should not apply *in pari delicto* on a motion to dismiss where it was not clearly evident that the defense

was applicable); In re Student Finance Corp., 335 B.R. 539, 547 (finding a complaint should not be dismissed under the doctrine of *in pari delicto* where it appears from the allegations that there are issues of fact that would bar the application of the doctrine).

**2.    Failure to State a Claim**

**a.    Equitable Subordination**

Defendants allege that Trustee has failed to sufficiently state a claim for equitable subordination because she has not sufficiently alleged that any pre-petition conduct by Defendants injured other creditors or conferred an unfair advantage on them.    See EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.), 934 F.2d 1315, 1321 (4th Cir. 1991) (setting forth the elements of equitable subordination).    Specifically, they contend that no pre-petition conduct they engaged in, through the liquidation of goods, could confer an unfair advantage on them or injure creditors because, as the Allowance Order found, AGM had a security interest in all of Debtor's goods.    Defendants also contend that the Chinese Mills, the party potentially injured by the liquidation of stolen lumber, has been made whole by a third party and therefore there are no injured creditors.

The Allowance Order was premised upon a finding that AGM was secured; however, as previously noted, Trustee through this adversary can challenge the priority of AGM's claim.    The outcome of this adversary could result in Defendants being paid at a substantially different level in priority.    See 11 U.S.C. § 502(j) (noting that Trustee may recoup an overpayment to a creditor); In re Chira, 353 B.R. 693, 723 (Bankr. S.D. Fla. 2006) (finding that equitable subordination may be used to subordinate creditors with an allowed secured claim).    If Defendants are paid at a different level in priority, they may have received more than they were entitled to receive.    Further, the Court cannot find, based upon the well pled allegations of the

17

amended complaint, that Defendants did not engage in inequitable conduct or that the liquidation of allegedly stolen goods did not injure creditors of Debtor. The allegations of the amended complaint, if true, would appear to support a finding that Defendants engaged in inequitable conduct injuring other creditors. Further, consideration of any payment by a third party to the Chinese Mills is outside of the scope of the pleading and may be irrelevant under the collateral source rule. See Atkinson v. Orkin Exterminating Co., Inc., 361 S.C. 156, 604 S.E.2d 385 (S.C. 2004) (discussing the collateral source rule). Therefore, Defendants' motion to dismiss Trustee's first cause of action for equitable subordination is denied.

b.    **Reclassification**

Like subordination, reclassification alters the priority of a creditor's claim. See Fairchield Dornier GMBH v. Official Committee of Unsecured Creditors (In re Dornier Aviation (North America), Inc.), 453 F.3d 225, 232 (4th Cir. 2006). However, reclassification is substantially different from subordination in that subordination focuses on the creditor's behavior; whereas, reclassification rests on the substance of the transaction giving rise to the claim. See id.; In re Cold Harbor Assocs., L.P., 204 B.R. 904, 915 (Bankr. E.D. Va. 1997) ("Rather than recharacterizing the exchange from debt to equity, or subordinating the claim for some reason, the question before this Court is whether the transaction created a debt or equity relationship from the outset."). To reclassify a claim, the Fourth Circuit suggests that the Court consider the following factors: "(1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's

18

ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments." See Dornier, 453 F.3d at 233 (citing Bayer Corp. v. Masco Tech, Inc. ( In re AutoStyle Plastics, Inc.), 269 F.3d 726, 749-750 (6th Cir. 2001)). These factors are aimed at determining the intent of the parties at the time they entered into the loan transaction, which is the overarching inquiry in determining whether the true character of an investment is either a loan or an equity contribution. See In re SubMicron Systems Corp., 432 F.3d 448, 455-456 (3d Cir. 2006).

In the amended complaint, Trustee has failed to sufficiently allege facts supporting a cause of action for reclassification. The allegation in Trustee's amended complaint focus on the alleged inequitable conduct by Defendants and not on the intent of the parties in entering into the underlying loan agreement. Trustee's reply to the motion to dismiss indicates that Trustee requires additional time to investigate this claim; however, the purpose of Defendants' motion is to test the legal sufficiency of the amended complaint without the subjecting themselves to discovery. See Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003). Therefore, Trustee shall amend her amended complaint within seven (7) days from the entry of this Order to sufficiently allege facts supporting the reclassification of Defendants' claim.

**c.    Preference**

Trustee's third cause of action seeks to recover payments made to Defendants one year prior to the petition pursuant to 11 U.S.C. § 547. Defendants allege that the complaint is defective because it fails to allege Defendants were insiders of Debtor at the time of the transfers

and because Trustee cannot otherwise prove that Defendants received more than they would otherwise be entitled to receive based upon the Allowance Order finding AGM to be secured.

As previously set forth, the outcome of this adversary may alter Defendants' priority in payment and therefore the Court cannot find that Trustee's action fails as a matter of law under 11 U.S.C. § 547(b)(5) because if Defendants' claim is subordinated or reclassified then they would appear to have received more than they would receive if such transfers had not been made.  See Hager v. Gibson, 109 F.3d 201, 210 (4th Cir. 1997) (noting a secured creditor received more than it would have otherwise received for purposes of 11 U.S.C. § 547(b)(5) when that creditor's claim was subordinated).  However, the amended complaint is vague as to when the preferential transfers took place.  11 U.S.C. § 547(b)(4)(B) allows Trustee to reach back more than ninety days prior to the petition if Defendants were insiders at the time of the preferential transfer.  Since the well-pled allegations of the amended complaint do not indicate that Defendants were insiders of Debtor for more than ninety days prior to the petition date, it seems that Trustee may only avoid those transfers that took place within ninety day of the petition date pursuant to 11 U.S.C. § 547(b)(4)(A).  To the extent that Trustee seeks to avoid transfers occurring more than ninety days prior to the petition date, she shall amend her amended complaint within seven (7) days from the entry of this Order to more specifically set forth when the alleged preferential transfers occurred and facts supporting the allegation that Defendants were insiders of Debtor at the time of such transfers.[14]

### d.    Breach of Fiduciary Duty

Defendants allege that Trustee failed to sufficiently allege that they owed a fiduciary duty to Debtor and breached this duty.  Generally, a lender does not owe fiduciary duties to a

---

[14]    The Court presumes, at this stage, that Debtor had a sufficient interest in the proceeds from the sale of the allegedly stolen goods for purposes of 11 U.S.C. § 547(b).  See In re Nova Tool & Engineering, Inc., 228 B.R. 678, 684 (Bankr. N.D. Ind. 1998).

borrower. See Regions Bank v. Schmauch, 354 S.C. 648, 582 S.E.2d 432, 444 (S.C. Ct. App.

2003).    Trustee asserts that the fiduciary relationship existed based upon Defendants' control

over Debtor prior to the petition date.    At common law, a fiduciary relationship may be

established when a lender exercises improper control over a borrower. See In re K Town, Inc.,

171 B.R. 313, 319 (Bankr. N.D. Ill. 1994).    Lender control may be established by a lender

engaging in the day-to-day management and operations of the borrower or compelling borrower

to engage in unusual transactions.    See NCNB Nat. Bank of N.C. v. Tiller, 814 F.2d 931, 936

(4th Cir. 1987) (overruled on other grounds Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir.

1990)); Temp-Way Corp. v. Continental Bank, 139 B.R. 299, 318 (Bankr. E.D. Pa. 1992).

Courts have also looked to whether the lender was an insider of the borrower, whether the lender

has the contractual right to control the management of the borrower, and whether the lender

dictated corporate policy and determined the disposition of the borrower's assets. See K Town,

171 B.R. at 319.    This theory of lender liability is consistent with South Carolina law that a

lender may be liable to third parties if lender assumes control over a borrower's business. See

Peoples Fed. Savs. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club, 310 S.C. 132, 145, 425

S.E.2d 764, 769-774 (S.C. Ct. App. 1992).

      Trustee has sufficiently alleged that Defendants controlled the operation of Debtor

through control over Debtor's inventory, operations, mail, management, and cash flow and by

excluding Debtor's principal from Debtor's business.    These allegations, if true, would appear to

indicate that Defendants controlled the operations of Debtor and therefore were fiduciaries of

Debtor.

      However, Trustee has not sufficiently alleged that Defendants breached a fiduciary duty

owed to Debtor or that Debtor was harmed by Defendants' actions.    The allegations incorporated

into Trustee's fifth cause of action indicate that Defendants liquidated property procured by Debtor but in which Debtor had no legal interest.[15] These allegations, if true, appear to indicate that Defendants' actions harmed third parties but not Debtor. There are not sufficient allegations in the amended complaint that Defendants breached their fiduciary duties owed to Debtor or that their control harmed Debtor by deepening its insolvency of Debtor or causing it other harm. Trustee shall amend her amended complaint within seven (7) days from the entry of this Order to more specifically set forth facts regarding Defendants' breach of a fiduciary duty owed to Debtor and how such breach harmed Debtor.

### e.    Constructive Trust and Accounting

Defendants allege that Trustee's final actions for accounting and constructive trust fail because Trustee has failed to properly plead that a fiduciary relationship existed between Debtor and Defendants. However, as previously noted, Trustee has sufficiently pled that a fiduciary relationship existed between Debtor and Defendants. Defendants also allege that fraud is an essential element of an action for a constructive trust and that Trustee has failed to plead fraud with particularity. South Carolina courts generally hold that fraud or the breach of a fiduciary duty are elements of a constructive trust; however, these elements are not always necessary to the imposition of a constructive trust. See Derivium, slip op. at 16-17 (denying a motion to dismiss based upon a trustee's failure to plead fraud with particularity in an action for a constructive trust). To state a cause of action for a constructive trust, Trustee need only state facts indicating that Defendants obtained property that they cannot in good conscious retain or withhold from another who is beneficially entitled to it. See SSI Medical Services, Inc. v. Cox, 301 S.C. 493, 392 S.E.2d 789, 793-794 (S.C. 1990). A constructive trust can arise by mistake of fact, abuse of confidence, or accident. See id. Trustee has sufficiently alleged in paragraphs 82 and 83 of the

---

[15]    In subsequent causes of action, Trustee alleges that Defendants obtained property of Debtor.

amended complaint that Defendants obtained property from Debtor that does not equitably belong to Defendants and therefore has sufficiently stated an action for a constructive trust.

Likewise, Trustee's action for accounting does not necessarily require Trustee to allege a breach of a fiduciary duty. Accounting is appropriate where there is a long complicated account or a need for discovery. See Rogers v. Salisbury Brick Corp., 288 S.C. 141, 382 S.E.2d 915, 917 (S.C. 1989). Accounting may also be appropriate to prevent unjust enrichment and require the relinquishment of property when there is a breach of a confidential relationship or a fiduciary duty. See id. In paragraphs 82, 83, and 86 of the amended complaint, Trustee sufficiently alleges grounds to support a cause of action for accounting.

## II.    Defendants' Motion Under Fed. R. Civ. P. 12(b)(1)

### A.    Standard For Granting the Motion Under Rule 12(b)(1)

Defendants move to dismiss Trustee's fourth cause of action under the "Trust Fund Doctrine" on grounds that she lacks standing to pursue the claim. Article III of the Constitution requires a party to have standing to invoke the powers of a federal court. See Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A complaint brought by a plaintiff that lacks standing may be dismissed pursuant to Fed. R. Civ. P. 12(b)(l). Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (finding where there is no jurisdiction "the only function remaining to the court is that of announcing the fact and dismissing the cause"): In re Student Finance Corp., 335 B.R. 539 (Bankr. D. Del. 2005). Standing requires that the party seeking relief has alleged a personal injury traceable to the conduct of another that may be redressed by the relief requested. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464,471-476, 102 S.Ct. 752, 757-761, 70 L.Ed.2d 700 (1982). Section 704(1) authorizes Trustee to "collect

and reduce to money the property of the estate." 11 U.S.C. § 704(1). Because claims of Debtor

constitute property of a bankruptcy estate, § 704(1) grants Trustee the right to assert causes of

action on behalf of Debtor. See 11 U.S.C. §§ 541(a)(l), 704(1). See also, Polis v. Getaways, Inc.,

(In re Polis), 217 F.3d 899, 901 (7th Cir.2000) (noting that § 541(a) has "uniformly been

interpreted to include causes of action"). However, if a claim belongs solely to creditors, Trustee

generally has no standing under 11 U.S.C. §§ 541 or 544(b) to pursue the claim unless it is

assigned to him by the creditors, notwithstanding the fact that recovery may benefit creditors.

See Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195

(1972); In re Bogdan, 414 F.3d 507, 513 (4th Cir. 2005). Whether a particular claim belongs to

Debtor, thus constituting "property of the estate," depends upon state law. See Daimler-Puch of

Am. Corp. v. Papvas, 852 F.2d 132, 135 (4th Cir. 1988).

### B.    Application of Law to Defendants' Rule 12(b)(6) Motion

Trustee relies on 11 U.S.C. § 544(b) as the source of her authority to sue on behalf of the

creditor body as a whole for Defendants alleged breach of the trust fund doctrine.  A review of

South Carolina case law does not indicate that an action for violation of the trust fund doctrine

belongs o the insolvent corporation but rather the action belongs to the creditor body.  See

Beckroge v. S.C. Power Co., 197 S.C. 184, 194-95, 15 S.E.2d 124, 128 (1941) (finding the

transfer of assets from one corporation to another may amount to a merger in fact even when the

predecessor corporation continues to exist and, in such cases, equity looks past form and at the

real effect of the transaction and, by application of the trust fund doctrine, the successor may be

held liable to prior creditors to the extent of assets received); Huggins v. Commercial & Sav.

Bank, 141 S.C. 480, 140 S.E. 177 (1927) (holding a successor bank which by transfer obtained

all assets of predecessor bank liable to depositor of predecessor bank); Ex parte Sav. Bank of

24

Rock Hill, 73 S.C. 393, 53 S.E. 614 (1906) (finding equity regards the property of a corporation

as held in trust for the payment of debts, and recognizes the right of creditors to pursue the

property wherever it may be transferred unless it has passed into the hands of a bona fide

purchaser). None of these cases recognize that the breach of a fiduciary duty to creditors, where

there is no allegation of accompanying harm to the corporation, is an asset of the corporation.

Therefore, the Court must find that Trustee lacks standing to pursue the fourth cause of action

because the action does not appear to be an asset of Debtor at state law. See Warth, 422 U.S. at

498 (holding "this Court has held that the plaintiff generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties.");

Caplin, 406 U.S. at 434. See also, In re Miller, 197 B.R. 810, 814-815 (Bankr. W.D.N.C. 1996)

(finding, under Fourth Circuit law, that there must be an injury to the debtor before a trustee can

pursue alter ego and veil piercing claims against insiders even though the action may benefit the

whole creditor body); In re Transcolor Corp., 296 B.R. 343, 369 (Bankr. D. Md. 2003) (finding

11 U.S.C. § 544 does not confer standing on trustee to sue on behalf of all creditors). But see, In

re James River Coal Co., 360 B.R. 139 (Bankr. E.D. Va. 2007) (finding a liquidating trustee may

have standing to sue on behalf of the entire creditor body when the claim is properly assigned to

the trustee).[16]

Moreover, the harm alleged in the complaint only appears to have injured a particular

class of creditors, i.e. those creditors whose stolen lumber was liquidated by Defendants. It is

well settled that Trustee does not have derivative standing to pursue an action on behalf of a

---

[16]     It appears that the position reflected in Miller is the majority position with respect to a trustee's standing to maintain an action on behalf of all individual creditors. As noted in Miller, the case law from the Circuit Courts supporting a trustee's right to sue for an injury to the entire creditor body have been limited by the subsequent decisions of those courts. See Miller, 197 B.R. at 814. James River is distinguishable in that the trustee was assigned the claims at issue through a confirmed chapter 11 plan. Further, the Eastern District of Virginia has previously cited Miller with approval and noted that a trustee may not have standing to bring claims belonging solely to creditors. See Fidelity Nat. Title Ins. Co. of New York v. Bozzuto, 227 B.R. 466, 472, fn 15 (Bankr. E.D. Va. 1998).

particular class of creditors.  <u>See</u> <u>Caplin</u>, 406 U.S. at 434. Therefore, the fourth cause of action

must be dismissed for lack of standing.

## III.     Conclusion

Based upon the foregoing, Defendants' motion to dismiss is granted in part and denied in

part.  Trustee's fourth cause of action is dismissed.  Trustee shall re-plead her second, third, and

fifth causes of action pursuant to the terms of this Order.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
May 21, 2007

26