FILED
at___O'clock &___min.___M

AUG 2 2007

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

United States Bankruptcy Court
Columbia, South Carolina (26)

| | |
|---|---|
| In re,<br><br>Worldwide Wholesale Lumber, Inc.,<br><br>Debtor(s). | C/A No. 06-01499-JW<br><br>Adv. Pro. No. 07-80008-JW<br><br>Chapter 7 |
| Michelle L. Vieira,<br><br>Plaintiff(s),<br><br>v.<br><br>AGM II, LLC, Lancelot Investor Fund, L.P.<br>d/b/a Surge Capital,<br><br>Defendant(s). | ORDER |

ENTERED

AUG 2 2007

L. G. R.

This matter is before the Court upon the Motion of AGM II, LLC and Lancelot Investors Fund, L.P. ("Defendants") to dismiss Counts Two and Four of the Second Amended Complaint filed by Michelle L. Vieira, as Chapter 7 Trustee ("Trustee") for Worldwide Wholesale Lumber, Inc. ("Debtor"), pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"). The Trustee filed an Objection to the Motion. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (F), (H), (K), and (O). The Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052.[1]

## FINDINGS OF FACT

1. Prior to the petition date, Debtor operated as a distributor of lumber. AGM II, LLC ("AGM") was the lender for Debtor and lent money based upon Debtor's inventory

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

in exchange for a security interest in the same. AGM and Debtor entered into a Master Financing Agreement, dated June 22, 2005, to evidence this relationship.

2. Debtor's bankruptcy case was commenced on April 12, 2006 when creditors of Debtor, other than AGM, filed an involuntary petition under chapter 7 with this Court.

3. Debtor consented to an order of relief under chapter 7 and an order of relief was entered on April 18, 2006.

4. The Trustee was appointed as the chapter 7 trustee in Debtor's case.

5. Count Two of the Trustee's Second Amended Complaint, the Reclassification claim, was first asserted in a Complaint she brought against AGM in the United States District Court for the District of South Carolina, Case No. 2:06-3111-PMD ("District Court Case"). The District Court, on motion of AGM, applied the standing order of reference to that action and transferred it to this Court. This case was assigned Adversary Proceeding No. 07-80008.

6. Count Four of the Trustee's Second Amended Complaint, the Breach of Fiduciary Duty claim, was first asserted in a separate adversary proceeding she brought against AGM in this Court as Adversary Proceeding No. 07-80013.

7. Defendants filed a motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement.

8. The Court entered an order in this adversary on February 28, 2007, which denied Defendants' motion to dismiss but ordered the Trustee to file an Amended Complaint.

9. On March 14, 2007, the Trustee filed her Amended Complaint in this adversary. Both the Reclassification claim and the Breach of Fiduciary Duty claim were included in the Amended Complaint and were asserted against Defendants.

10. On March 26, 2007, Defendants filed a Motion to Dismiss the Amended Complaint.

11. On April 4, 2007, a Consent Order was entered consolidating adversary proceeding 07-80008 and adversary proceeding 07-80013 and dismissing adversary proceeding 07-80013.

12. The Court entered an order in this adversary on May 21, 2007, which granted Defendants' motion in part, denied it in part, and ordered the Trustee to re-plead the Reclassification claim and Breach of Fiduciary Duty claim.[2]

13. On May 25, 2007, the Trustee filed the Second Amended Complaint.

14. Defendants filed the Motion on grounds that the Second Amended Complaint fails to state a cause of action for Reclassification or Breach of Fiduciary Duty.

## CONCLUSIONS OF LAW

The pleading standard under Fed. R. Civ. P. 8(a) is liberal and requires only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In order to survive a Rule 12(b)(6) motion, a complaint does not need detailed factual allegations, but the Plaintiff is obligated to provide grounds for his entitlement to relief, which requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct.

---

[2] The Findings of Fact of the Court's May 21, 2007 Order are incorporated herein by reference.

3

at 1965. The Supreme Court has recently discredited the often quoted phrase from Conley v. Gibson that a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S.Ct. at 1968 ("*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough.... The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard...."). The Supreme Court stated in Twombly that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true (even if doubtful in fact)." Id. at 1965. In deciding Defendants' Rule 12(b)(6) motion to dismiss, the Court must take all well-pled material allegations of the Second Amended Complaint as admitted and view them in the light most favorable to the Trustee. See De Sole v. U.S., 947 F.2d. 1169, 1171 (4th Cir. 1991)(citing Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848 (1969)). Defendants seek dismissal of the reclassification and breach of fiduciary duty claim under Rule 12(b)(6) based on the alleged failure by the Trustee to state a claim for these causes of action.

## I.     Reclassification Claim

Reclassification, also referred to as recharacterization, alters the priority of a creditor's claim. It requires a factual determination regarding whether the creditor's asserted debt is actually an equity contribution disguised as debt. In re Repository Technologies, Inc., 363 B.R. 868 (Bankr. N.D. Ill. 2007). The Fourth Circuit has stated that a court may consider the following factors in determining whether it should reclassify a claim:

>  (1) the names given to the instruments, if any, evidencing the indebtedness;
>  (2) the presence or absence of a fixed maturity date and schedule of payments;
>  (3) the presence or absence of a fixed rate of interest and interest payments;
>  (4) the source of repayments; (5) the adequacy or inadequacy of

4

capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

Fairchild Dornier GMBH v. Official Committee of Unsecured Creditors (In re Dornier Aviation (North America), Inc.), 453 F.3d 225, 233 (4th Cir. 2006). These factors are to be applied to a particular case keeping in mind the specific circumstances surrounding the case and no single factor is determinative of the outcome. In re Hoffinger Industries, Inc., 327 B.R. 389, 408 (Bankr. E.D. Ark. 2005). "Of primary concern is whether the transaction carries the earmarks of an arm's length bargain.... The more characteristics of an arm's length transaction that are present, the more likely the transaction would be treated as a debt instead of an equity contribution." Id. The party seeking to reclassify a debt as an equity contribution needs to demonstrate that the intent of the parties at the time they entered into the transaction was to enter into an investment relationship, not a lending relationship. In re SubMicron Systems Corp., 432 F.3d 448, 455-56 (3d Cir. 2006). The intent of the parties may be inferred from the language of the contract, the conduct of the parties, and the economic reality of the surrounding circumstances. Id. at 456.

In its May 21, 2007 Order on Defendants' previous motion to dismiss, the Court stated that the Trustee failed to sufficiently allege facts supporting reclassification because she focused on the alleged inequitable conduct by Defendants and not on the intent of the parties in entering into the underlying loan agreement. The Trustee alleges in the Second Amended Complaint that subsequent to February 2006, Defendants infused money into the Debtor by way of making advances, but at the time Defendants made the advances, the

5

relationship between AGM and Debtor had changed such that the substance and character of the Defendants' transaction with Debtor had become one of an equity contribution.

The Trustee also appears to allege several of the reclassification factors. The Trustee alleges that from February 2006 forward, that Defendants were the beneficiaries of written, irrevocable stock proxy representing all of the shares in Debtor and took possession of the share certificates representing such stock. The Trustee also alleges that Defendants became insiders of Debtor. These facts, if true, demonstrate that there was an identity of interest between AGM and Debtor.

The Trustee further alleges that Defendants exercised control over Debtor by forcing Debtor to amend its Articles of Incorporation, creating a Board of Directors and accepting the appointment of a member chosen by Defendants to the Board of Directors. She alleges that Defendants' agent took control of Debtor's operations. These facts, if true, would demonstrate that Defendants actively managed and controlled Debtor's operations beginning in February of 2006, which may indicate the absence of an arm's length transaction with respect to their advances during this time. See Hoffinger, 327 B.R. at 408 (stating that, in addition to the eleven factors, some courts also consider the purported creditor's participation in management flowing as a result of the transaction). The Trustee also includes factual allegations regarding Debtor's inadequate capitalization and the source of repayments for the loan. Specifically, the Trustee alleges that "Defendants controlled the bills of lading that were wrongfully procured, used the proceeds from the sale of the wrongfully procured inventory for their own benefit and failed to pay [suppliers] for the inventory."

6

However, Defendants assert that the focus of the court's inquiry should be on the facts at the time Defendants entered into the loan transaction, which they assert was in June 2005, when the loan documents were executed. Because no facts from this time period were alleged, Defendants argue the Trustee fails to state a claim. In response, the Trustee asserts that changes in the relationship between a lender and debtor can result in subsequent advances being treated as equity, citing In re Respository Technologies, Inc., 363 B.R. 868, 882 (Bankr. N.D. Ill. 2007). Defendants argue that Repository Technologies is distinguishable because it dealt with an insider who made three separate loans. Although there may be more facts supporting reclassification in the Repository Technologies case, it is important to note that Repository Technologies was decided on a motion for summary judgment, following a trial on the merits. It appears that Repository Technologies may support the proposition that, under certain circumstances, a subsequent advance can be reclassified as an equity contribution where the lender's motive changes to that of an investor. The Court will further consider such precedent after the parties have had an opportunity for discovery.

Based upon the foregoing, the Court finds that the Trustee's Complaint alleges sufficient facts that raise the right to reclassification beyond the speculative level.[3] Accordingly, Defendants' Motion should be denied as to the reclassification claim.

## II.　Breach of Fiduciary Duty Claim

In its May 21, 2007 Order, the Court found that the "Trustee has sufficiently alleged that Defendants controlled the operation of Debtor through control over Debtor's inventory,

---

[3] The Court further notes that allowing this claim to survive the motion to dismiss does not impose an additional burden on the parties because the discovery for the reclassification claim would be substantially similar to the discovery for the Trustee's equitable subordination claim.

7

operations, mail, management, and cash flow and by excluding Debtor's principal from Debtor's business. These allegations, if true, would appear to indicate that Defendants controlled the operations of Debtor and therefore were fiduciaries of Debtor." However, the Court further found that the Trustee failed to sufficiently allege that Defendants breached a fiduciary duty owed to Debtor or that Defendants' control harmed Debtor by deepening its insolvency or causing it other harm.

In her Second Amended Complaint, the Trustee alleges that Defendants breached their fiduciary duties to Debtor in the following ways: (1) Defendants' agent vetoed Debtor's plans to file for chapter 11 bankruptcy protection, and this resulted in Debtor being placed into an involuntary chapter 7 bankruptcy; (2) Defendants took control of the payment of bills and paid themselves and possibly creditors who asserted warehouse liens or storage liens; and (3) Defendants caused Debtor to acquire goods and inventory from trade creditors on an unsecured basis and then asserted secured rights in those goods and inventory, denying payment to the trade creditors, which deepened Debtor's insolvency by the incurrence of trade debt.

Defendants assert that the Trustee's Second Amended Complaint is deficient for the following reasons: (1) the fiduciary duties owed by officers and directors of a corporation have been codified under S.C. Code Ann. §§ 33-8-300 and 33-8-420, and the Trustee has failed to allege a violation of a statutory duty provided under either statute; (2) the Trustee's allegations that their alleged agent vetoed a plan to file Chapter 11 bankruptcy protection do not overcome the protections of the business judgment rule; (3) the Trustee's allegations merely show that Defendants were exercising control over their rightful collateral, which

cannot be actionable; and (4) the Trustee's allegation of "deepening insolvency" does not state a cognizable claim for breach of fiduciary duty.

While it is true that an officers and directors owe the duties set forth under these statutes, they also owe a duty of loyalty to the corporation. See McGuffin v. Barman (In re BHB Enterprises, LLC), C/A No. 97-01975, Adv. Pro. No. 97-80227, 1998 WL 2016846, *22 (Bankr. D. S.C. Sept. 30, 1998)("It is well settled that corporate officers and directors have a continuing duty of loyalty to the corporation, and that this duty prevents them from acquiring interests that are adverse to the corporation"). This duty of loyalty requires an officer or director to not engage in self-dealing and usurp corporate opportunities. See id. The business judgment rule, which usually precludes judicial review of actions taken by a governing board, implicitly provides for the duty of loyalty, as the rule does not apply if the directors have acted in bad faith or engaged in fraud, self-dealing, or unconscionable conduct. See Kuznik v. Bees Ferry Associates, 342 S.C. 579, 599, 538 S.E. 2d 15, 25-26 (Ct. App. 2000); Dockside Ass'n v. Detyens, 294 S.C. 86, 87, 362 S.E.2d 874, 874 (1987). Several of the Trustee's allegations, if true, may indicate that Defendants or Defendants' agent may have acted in bad faith or engaged in self-dealing.

Defendants claim that the Trustee has only alleged that Defendants, in exercising their control over the Debtor, used proceeds of their own collateral to pay themselves and possibly creditors who asserted warehouse liens or storage liens. The Trustee asserts in the Second Amended Complaint that Defendants wrongfully seized and sold stolen inventory in violation of state and federal law and used the proceeds from the wrongfully procured inventory for their own benefit. If Debtor did not have an ownership interest in the inventory claimed as Defendants' collateral, then the inventory may not constitute proper

9

collateral and Defendants may not have an interest in the proceeds. Accordingly, these facts, if true, may indicate that Defendants acted in bad faith or engaged in self-dealing.

Finally, Defendants claim that the Trustee's allegation of "deepening insolvency" does not state a cognizable claim for breach of fiduciary duty. Defendants argue that "deepening insolvency" has not been recognized as a cause of action in South Carolina and has been rejected as a separate cause of action by many courts in other jurisdictions. It does not appear to the Court that the Trustee is attempting to assert a separate cause of action for deepening insolvency.[4] Rather, the Trustee appears to be asserting that Debtor's deepening insolvency was one of the ways in which Debtor was harmed as a result of Defendants' breach of fiduciary duty.[5] Courts in other jurisdictions have recognized that deepening insolvency can be asserted as a measure of damages. Schnelling v. Crawford (In re James River Coal Co.), 360 B.R. 139, 178 (Bankr. E.D. Va. 2007)("The theory of deepening insolvency has been viewed alternatively as a theory of damages rather than a separate tort."); Alberts v. Tuft (In re Greater Southeast Community Hospital Corp. I), 353 B.R. 324, 338 (Bankr. D. D.C. 2006) ("Unless and until this court is told differently by a higher court in its own circuit, deepening insolvency will remain a viable theory of damages in this jurisdiction.") Based on this precedent, it appears that deepening insolvency may be a possible theory of damages if asserted in connection with a breach of fiduciary duty claim.

For the foregoing reasons, the Court finds that the Trustee has alleged sufficient facts to state a claim for breach of fiduciary duty against Defendants and that Defendants' motion to dismiss Count Four of the Complaint should be denied. Therefore, it is hereby

---

[4] The Court does not believe it is necessary to predict whether South Carolina would recognize a separate cause of action for deepening insolvency, as this issue is not before the Court at this time.

[5] The Trustee also asserts that Debtor was harmed because it was unable to obtain outside funding to sustain its business as a result of Defendants' failure to pay trade creditors and that Debtor was forced into liquidation because Defendants' agent vetoed Debtor's plan to file for chapter 11 bankruptcy protection.

ORDERED that Defendants' Motion to Dismiss Counts Two and Four of the Second Amended Complaint is denied.

AND IT IS SO ORDERED.

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
August 2, 2007