

FILED
at ___ O'clock & ___ min. ___ M

APR 2 2008

United States Bankruptcy Court
Columbia, South Carolina (29)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International),<br><br>Debtor(s). | C/A No. 06-01499-JW<br><br>Adv. Pro. No. 07-80008-JW |
| Michelle L. Vieira, as Trustee for the Estate of Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International)<br><br>Plaintiff(s),<br>v.<br><br>AGM II, LLC, Lancelot Investor Fund, L.P. d/b/a Surge Capital,<br><br>Defendant(s). | Chapter 7<br><br>**ORDER**<br><br>**ENTERED**<br><br>APR 2 2008<br><br>**L. G. R.** |

This matter comes before the Court upon the Motion for a Protective Order as to the Deposition Testimony of Russell Stadelman ("Motion"), filed by Michelle L. Vieira ("Trustee"), as the Chapter 7 Trustee for the Estate of Worldwide Wholesale Lumber, Inc. d/b/a Veracor Wood Products International ("Debtor"). The Trustee seeks entry of an order protecting certain communications pursuant to the attorney-client privilege. Specifically, the Trustee seeks to protect two categories of communications: (1) pre-petition communications between Russell Stadelman ("Stadelman") and the former corporate counsel for Debtor and (2) post-petition communications between Stadelman and counsel for the Trustee in this adversary proceeding.

AGM II, LLC and Lancelot Investors Fund, L.P. (collectively, "Defendants") filed a Limited Objection to the Trustee's Motion, objecting only to the application of the attorney-client privilege to the second category of communications, namely those communications

between Stadelman and counsel for the Trustee. Defendants stipulated to the application of the attorney-client privilege to the pre-petition communications between Stadelman and Debtor's corporate counsel and the Trustee's right to assert such a privilege.

Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052, the Court makes the following Findings of Fact and Conclusions of Law:[1]

## FINDINGS OF FACT

1. Before the filing of the involuntary petition initiating this case on April 12, 2006, Russell Stadelman ("Stadelman") was the sole shareholder, president, and a director of Debtor.

2. On January 22, 2007, the Trustee commenced this adversary proceeding by filing the complaint against Defendant AGM II, LLC. The complaint was subsequently amended to include Defendant Lancelot Investor Fund, L.P. d/b/a Surge Capital. In this adversary proceeding, the Trustee has asserted the following causes of action against Defendants: (1) equitable subordination pursuant to 11 U.S.C. § 510; (2) reclassification; (3) avoidance of preferential payments (11 U.S.C. § 547); (4) breach of fiduciary duty to Debtor; (5) constructive trust; and (6) accounting.

3. The Trustee has retained Nexsen Pruet, LLC as special counsel to assist her in the review and analysis of potential claims the estate may have against Defendants and to pursue litigation against Defendants on those claims for the benefit of the estate.

4. Stadelman was deposed by counsel for Defendants on February 8, 2008. During the course of that deposition, Stadelman was asked several questions concerning

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such and, conversely, to the extent any conclusions of law constitute findings of fact, they are also adopted as such.

2

communications he might have had with the Trustee's attorneys at Nexsen Pruet. Specifically, counsel for Defendants asked Stadelman to disclose the content of two of his conversations with the Trustee's attorneys: (1) a 45-minute telephone conversation with Suzanne Grigg and Richard Tapp in mid-January 2008, and (2) an approximately 25-minute conversation with Suzanne Grigg on February 8, 2008, prior to the deposition. The Trustee's attorneys instructed Stadelman not to answer those questions, asserting the attorney-client privilege, and Stadelman followed their instruction.[2]

5. At the time of Stadelman's communications with counsel for the Trustee, Stadelman was no longer president, director, or an employee of Debtor.

## ISSUE

The Court is presented with the issue of whether the attorney-client privilege applies to post-petition communications between a former president and director of a debtor and counsel for the Chapter 7 trustee of that debtor.

## CONCLUSIONS OF LAW

The attorney-client privilege can be asserted by both individuals and corporations and serves the function of promoting full and frank communications between attorneys and their clients. Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348, 105 S.Ct. 1990 (1985). This privilege protects both "the giving of legal advice to those who can act on it and the giving of information to the lawyer to enable him to give sound and informed advice." Hanson v. United States Agency for International Development, 372 F.3d 286, 291 (4th Cir. 2004). Because this adversary proceeding involves both federal and

---

[2] In the subject deposition, Defendants' counsel did not ask specific questions that indicated the nature of the information he requested. The question asked by counsel for Defendants was as follows: "Tell me about your conversations with Ms. Grigg." Counsel for the Trustee responded: "Object to the extent that it deals with corporate issues." A similar question was asked regarding the conversation with Richard Tapp. The Court's ruling in this instance is based upon the record of the deposition presented.

state law claims, the federal common law of attorney-client privilege would apply. See Virmani v. Novant Health, Inc., 259 F.3d 284, 287 n.3 (4th Cir. 2001). In Hawkins v. Stables, the Fourth Circuit set forth the following test for determining the existence of the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

148 F.3d 379, 383 (4th Cir. 1998). The proponent of the attorney-client privilege has the burden of demonstrating its applicability. See id.

When a corporation files a bankruptcy petition, all assets of the corporation are transferred to the bankruptcy estate, which is represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is given the power to investigate the debtor's financial affairs, to sue to recover property on behalf of the estate, and may be authorized to operate the corporate debtor's business for a period of time. Id. at 352. In other words, the trustee essentially becomes the successor management of the debtor. In Weintraub, the Supreme Court held that the trustee of a corporation in bankruptcy also acquires the power to waive the corporation's attorney-client privilege with respect to pre-petition communications. 471 U.S. at 358. A trustee's right to assert the attorney-client privilege is a logical extension of the holding in Weintraub. See id. at 357 (finding that giving the trustee control over the attorney-client privilege would give no greater chilling effect on attorney-client communications than in the case of a solvent corporation, where individual officers and

directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel).

Defendants do not dispute that the Trustee may assert the attorney-client privilege as to pre-petition communications between Stadelman and the attorneys who represented Debtor at the time of those communications. With respect to the two conversations between Stadelman and counsel for the Trustee that occurred post-petition, Defendants argue that the Trustee cannot assert the attorney-client privilege as to these communications because Stadelman is not the client of Trustee's counsel and he was not an officer, director or employee of Debtor at the time of the communications with Trustee's counsel, so the privilege would not extend to him by virtue of his former relationship to Debtor.

In response, the Trustee asserts that under In re Allen, 106 F.3d 582, 606 (4th Cir.1997), the attorney-client privilege protects communications of former employees such as Stadelman. The Trustee further contends that extending the privilege to communications between the principal or owner of a corporate debtor and the Chapter 7 trustee's counsel is a natural application of the attorney-client privilege recognized in Weintraub. Finally, the Trustee claims that the common interest doctrine provides protection of the communications between Stadelman and counsel for the Trustee.

I.   *Application of Attorney-Client Privilege to Communications with Stadelman*

In In re Allen, the Fourth Circuit addressed the question of whether communications between an entity's outside counsel and the entity's former employees would fall within the scope of the attorney-client privilege.[3] The Fourth Circuit concluded that the analysis applied by the Supreme Court in Upjohn v. United States to determine which employees fall

---

[3] In Allen, the entity was the Office of the Attorney General for the State of West Virginia.

5

within the scope of the attorney-client privilege applies equally to former employees.[4] 106 F.3d at 606. Based on the Upjohn analysis, the Fourth Circuit stated that the privilege applies to former employees when (1) the corporation employed the employee during the time period at issue, (2) the former employee possessed relevant information, and (3) counsel communicated with the former employee at the direction of her client in order to provide legal advice or assistance to the client. Id. The Fourth Circuit further held that the privilege also applies to an attorney's investigation, when the investigation is related to the rendition of legal services. Id. at 603.

Under the facts of this case, the application of the foregoing factors indicates that the privilege would apply to certain post-petition communications between Stadelman and counsel for the Trustee. Stadelman was an officer and director of Debtor during the time period when the claims that are the subject of this proceeding arose against Defendants. As a result of his role as an officer and director, Stadelman may have information that is relevant to counsel's investigation of the claims against the Defendants and the rendering of legal advice by counsel to the Trustee.[5] In this case, the Trustee's counsel appeared to be communicating with Stadelman, a former employee of Debtor, for the purposes of investigation and the rendering of legal advice to their client, the Trustee, as successor to

---

[4] In Upjohn, the Supreme Court rejected a "control group test"[4] for the application of the attorney-client privilege to corporate employees in favor of a broader approach that examines whether the communications concerned matters within the scope of the employees' corporate duties, and whether the employees were sufficiently aware that they were being questioned in order for the corporation to obtain legal advice. Upjohn v. United States, 449 U.S. 383, 101 S.Ct. 677 (1981).

[5] The mere fact that Stadelman is not a "client" in the sense that he is personally seeking legal advice from Trustee's counsel is insufficient to deny application of the attorney-client privilege in this case. There is no question that the Trustee is the client of Trustee's counsel; however, the Trustee stands in the shoes of Debtor, and Stadelman, as a former officer and director of Debtor, is a former agent of Debtor. As a corporation, Debtor is unable to speak for itself and provide information to the Trustee. The Trustee lacks the necessary personal knowledge of the facts surrounding the claims against Defendants to be able to communicate them directly to her counsel. The Trustee and her counsel need to be able to communicate in confidence with former agents of the corporation in order to develop their legal theory for claims asserted on behalf of Debtor.

Debtor. See Upjohn, 449 U.S. at 390-91 (noting that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant"); In re Allen, 106 F.3d at 601 (finding that an attorney's investigatory interview with a former employee of her client was privileged). Therefore, to the extent that counsel's communications with Stadelman concern matters within the scope of his corporate duties, these communications would be covered by the attorney-client privilege.[6] Since Defendants' counsel sought disclosure of the entire conversation between Stadelman and the Trustee's counsel, the Court must sustain the assertion of privilege in this case.

Finally, contrary to Defendants' arguments, it appears that the application of the privilege to these communications between counsel for Trustee and Stadelman would not prejudice Defendants.

> The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning the fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Upjohn, 449 U.S. at 395-96 (quoting Philadephia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (E.D. Pa. 1962)). Defendants are free to directly question Stadelman regarding discoverable facts, but may not inquire as to the communications with Trustee's counsel.

For the foregoing reasons, the Court finds that the attorney-client privilege applies to the pre-petition communications between Stadelman and the former corporate counsel for

---

[6] Communications between Stadelman and counsel for the Trustee regarding Stadelman's post-petition conduct and knowledge he acquired when he was no longer acting in the capacity of an officer or director of Debtor would not appear to be covered by the attorney-client privilege.

Debtor and to the post-petition communications between Stadelman and counsel for the Trustee in this adversary proceeding to the extent that counsel's communications with Stadelman relate to matters within the scope of his corporate duties. The Court further finds that the Trustee, as the holder of the attorney-client privilege belonging to Debtor, may properly invoke the privilege as to these communications and that the privilege has not been waived.

II.    Common Interest Doctrine

The Trustee further argues that she may assert the attorney-client privilege regarding the communications with Stadelman under the common interest doctrine. The common interest doctrine is an exception to the general rule that disclosure of privileged information to a third party operates as a waiver of the attorney-client privilege. In re Grand Jury Subpoenas, 902 F.2d 244, 248 (4th Cir. 1990). This doctrine allows persons who share a common interest in litigation to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims. The protection of the privilege under this doctrine applies regardless of whether the action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal. Id. at 249. The doctrine prevents privileges from being waived without the consent of all parties who share the privilege. Id. at 250; Fort v. Leonard, C/A No. 7:05-1028-HFF-WMC, slip op., 2007 WL 518593 (D.S.C. 2007). "[T]he common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." In re Grand Jury Subpoenas, 902 F.2d at 249; Fort v. Leonard, 2007 WL 518593 at *1.

However, because the Court finds that the communications between counsel for the Trustee and Stadelman are privileged due to Stadelman's status as a former officer and director of Debtor, the Court declines to address the applicability of the common interest doctrine to this case.

It is, therefore, ORDERED that the Trustee's Motion for a Protective Order as to the Deposition Testimony of Russell Stadelman is granted to the extent that Defendants seek the disclosure of pre-petition communications between Stadelman and the former corporate counsel for Debtor and the disclosure of post-petition communications between counsel for the Trustee and Stadelman that relate to matters within the scope of his corporate duties.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
April 2, 2008